NOT DESIGNATED FOR PUBLICATION

No. 123,349

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSUE ROBLES,
*Appellant*,

v.

CW WELDING, LLC,
*Appellee.*


MEMORANDUM OPINION

Appeal from Ford District Court; SIDNEY R. THOMAS, judge. Opinion filed December 3, 2021.
Affirmed.


*Pantaleon Florez Jr.*, of Topeka, for appellant.


*Daniel H. Diepenbrock*, of Law Office of Daniel H. Diepenbrock, P.A., of Liberal, for appellee.


Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.


PER CURIAM: Josue Robles appeals the jury verdict and judgment from the Ford County District Court finding Robles and CW Welding, LLC (CW Welding) equally at fault for a motor vehicle collision. Robles contends the district court committed reversible error by not providing the jury with his requested jury instruction setting forth the rules of the road for passing another vehicle on the right. Although the instruction was legally appropriate, we hold the evidence in a light most favorable to Robles did not provide a factual basis for giving the jury the instruction. On a related matter, Robles reprises his jury instruction argument while arguing that the district court erroneously denied his motion to alter or amend the judgment. But Robles has not shown the district

1

court's decision was unreasonable or based on an error of law or fact. As a result, he is not entitled to a new trial, and we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Robles filed this action seeking recovery of damages he incurred from a motor vehicle collision that resulted when the tractor-trailer he was operating was struck by a pickup truck pulling a gooseneck trailer owned by CW Welding. The pickup truck was driven by CW Welding's employee, Cornelius Loewen. Robles alleged personal injuries and economic loss because of the negligence of Loewen and CW Welding.

The collision occurred in the late afternoon of September 4, 2015. Robles was operating his tractor-trailer westbound on United States Highway 56 (U.S. 56) heading towards the intersection of 21 Road near Dodge City. At that location, U.S. 56 is a two-lane highway with an eastbound and westbound lane. The highway has a paved shoulder that is 3 feet, 11 inches wide. The speed limit for U.S. 56 is 65 miles per hour.

The U.S. 56 Highway intersects with 21 Road, a gravel county road with narrow shoulders about 1- to 2- feet wide. Motorists traveling on 21 Road must stop for stop signs protecting the intersection with U.S. 56. Motorists traveling on U.S. 56 do not encounter traffic control devices regulating traffic at the intersection.

Prior to the collision, Loewen was driving the pickup truck and following directly behind Robles' tractor-trailer in the westbound lane. According to Robles, as he approached 21 Road, he slowed down, activated his right-turn signal, and checked his mirrors. Robles made a wide right turn onto 21 Road. Before Robles completed the turn, however, Loewen's truck struck the right side of Robles' tractor. Robles was hurt, and Loewen died from his injuries.

Robles filed a petition seeking damages resulting from the collision. The defendants were CW Welding and its employee, Loewen. Robles asserted that Loewen breached his duty to drive safely and that his injuries were a direct and proximate result of Loewen's negligence. The petition alleged that Loewen followed too closely, failed to yield the right of way to Robles when Robles turned right onto 21 Road, and attempted to illegally pass Robles on the right on U.S. 56. In its answer, CW Welding denied Robles' allegations asserted in the petition.

A two-day jury trial began on October 8, 2019. At trial, Robles testified that he immigrated from Mexico in his late teens. He required an interpreter at trial. Robles attended a driving school and obtained his commercial driver's license (CDL) to lawfully operate tractor-trailers. Upon receiving his CDL, Robles began working for Triple-8 Trucking—the business he was working for at the time of the collision—in the winter of 2014.

Robles testified regarding the circumstances surrounding the collision. According to his account, before taking the right turn onto 21 Road he slowed down, activated his right turn signal, checked the front and back of the trailer, and began the turn at about 10 miles per hour. Robles checked that there were no oncoming cars so that he could drive about 2 feet into the oncoming lane of U.S. 56 to make a wide right turn. He did not see any vehicles behind his trailer, although on cross-examination Robles testified that he saw a white car far behind the trailer before starting the turn.

Robles explained that he made the wide right turn the way that he did because 21 Road is a narrow "dirt road," which would not hold the weight of the trailer. On cross-examination, Robles was asked numerous questions by counsel for CW Welding about the CDL training manual's instructions regarding correct and incorrect right turns. The manual instructed that to make a correct right turn, the driver of the tractor-trailer must turn slowly and if the driver cannot make the right turn without driving into another lane,

3

the driver is to turn wide and keep the rear of the vehicle close to the curb to prevent other drivers from passing on the right. The driver is also instructed not to turn wide to the left at the start of the right turn because other drivers may mistake the movement as a left turn and try to pass on the right.

Robles described the turn that he made before the accident as encroaching about 2 feet into the oncoming lane of U.S. 56, with the trailer remaining in the right lane throughout the turn. Robles recalled that before he completed the right turn, the pickup truck driven by Loewen struck the diesel fuel tank on the right side of his tractor and the impact pushed the tractor-trailer to the side of the road. After the collision, the tractor was inoperable.

Robles did not seek medical treatment immediately after the collision but went to the hospital the next morning and received a prescription for pain medication. Robles was treated by a physician and chiropractor for pain related to the collision. He began working part-time at Triple-8 Trucking but later quit and moved to California where he works at his brother's business maintaining and cleaning houses.

Kansas Highway Patrol Trooper Keefe Hemel testified about his investigation of the fatality collision. Upon arrival at the scene, Trooper Hemel measured and photographed the scene. Some of the photographs and a diagram were admitted in evidence. Based on his investigation, the trooper determined that Loewen's anti-lock brakes were applied when the pickup truck left the roadway on the right and collided with the tractor-trailer. The distance between where Loewen's pickup truck left the roadway until impact was measured at 90.2 feet. In short, about 90 feet before the intersection of U.S. 56 and 21 Road, Loewen's pickup truck veered right and then collided with the front axle of Robles' tractor.

Trooper Hemel confirmed that an object traveling at 65 miles per hour covers 95-feet per second. But the trooper did not determine the speed of Robles' tractor-trailer or Loewen's pickup truck. Of note, the shoulder on U.S. 56 was not wide enough to accommodate Loewen's vehicle.

At the scene, Trooper Hemel spoke with Duane Myers, who witnessed the collision. In his statement at the scene, Myers stated that the pickup truck failed to see the tractor-trailer turning but Myers saw that the tractor-trailer was making the right turn. At trial, Myers was called as a witness by CW Welding. Myers testified that he has maintained a CDL since 2006. On the afternoon of September 4, 2015, he was hauling a trailer heading west on U.S. 56. Myers confirmed that Loewen's pickup truck pulling a gooseneck trailer was in front of him and that Myers was about six or seven truck lengths back at the time of the collision. Myers was not able to see Robles' trailer lights before the collision to determine if Robles used a turn signal. But he testified that after the collision the trailer did not have its turn signal activated.

Evidence was presented regarding the appropriateness of Robles' right turn. As described in the CDL manual, Robles was executing a "jug handle turn" which involves steering the cab to the left into the oncoming lane at the start of the right turn onto the intersecting roadway. This maneuver is not recommended. According to the CDL manual, a "button hook turn" involves turning right onto the intersecting highway and then steering left of center on that highway to complete the right turn. This maneuver is recommended. Myers testified that he was familiar with the right turns described in the CDL manual and that the turn Robles made was a "jug handle turn," not a "buttonhook turn." According to Myers, however, the manual allows for situations that may require a driver to turn right by steering to the left into the oncoming lane at the start of the turn. But he testified, in his opinion, turning right onto the county road from a U.S. highway was not an appropriate occasion to cross into the oncoming U.S. highway and make a jug handle turn.

5

Myers witnessed the tractor-trailer steer into the oncoming lane and then turn back to the right. During this maneuver, the left side of half of the tractor crossed the center line of U.S. 56 while the trailer primarily stayed in the right lane. Myers testified that when the tractor-trailer made the right turn, Loewen's pickup truck continued driving straight and veered off a little to the right before hitting the tractor. Myers testified that Loewen's pickup truck veered right and "didn't go off the road until after the impact."

At the conclusion of the evidence, the district court held a jury instruction conference. Counsel for CW Welding objected to including PIK Civ. 4th 121.20 (2012)—an instruction regarding passing or overtaking a vehicle on the right—because there was no evidence that Loewen was passing on the right immediately before the collision. On the other hand, counsel for Robles requested the instruction, asserting there was at least conflicting evidence that Loewen was attempting to pass on the right based on Trooper Hemel's testimony regarding the shadow marks left by Loewen's vehicle.

The district court ruled the proposed instruction was not appropriate because the testimony did not show Loewen was passing on the right and the shadow marks were consistent with Loewen merely trying to avoid something in front of him. The district court declined to instruct the jury on Kansas law regarding passing on the right.

The jury returned a verdict finding Robles 50% at fault and CW Welding 50% at fault in causing the collision.

Robles filed a motion to alter or amend the judgment asking for a new trial based on the court's decision to not give the PIK Civ. 4th 121.20 jury instruction. At the hearing on the motion, counsel for Robles contended that, in a light most favorable to him, there was sufficient evidence to establish that Loewen improperly attempted to pass Robles on the right. Counsel for CW Welding countered that the evidence showed Loewen veered to the right not to pass, but to avoid the collision, and even if the instruction was factually

6

appropriate, giving the instruction would not have impacted the verdict based on the evidence.

The district court ruled the evidence showed Loewen was following too closely and veered to the right to avoid the accident. The district court concluded that even it was error to omit the instruction, it was harmless and denied the motion.

Robles appeals.

FAILURE TO PROVIDE THE PIK CIV. 4TH 121.20 JURY INSTRUCTION

On appeal, Robles contends the district court erred in failing to give the PIK Civ. 4th 121.20 jury instruction which defines lawfully passing another vehicle on the right. Robles asks our court to reverse and remand for a new trial.

Appellate courts use a multistep analysis when reviewing claims of instructional error. First, our court exercises unlimited review over questions of appellate jurisdiction and issue preservation. We also have unlimited review to determine whether the instruction was legally appropriate. If the instruction is legally appropriate, we examine the record in the light most favorable to the requesting party to determine whether sufficient evidence supported giving the instruction. Finally, if the district court erred, we apply the harmless error analysis. See *Foster v. Klaumann*, 296 Kan. 295, 301-02, 294 P.3d 223 (2013); *State v. Ward*, 292 Kan. 541, 565-66, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

At the outset, Robles preserved this instruction issue for appeal. He requested the jury instruction and objected when the district court declined to provide it to the jury. Next, we consider whether the instruction was legally appropriate. Robles argues the

7

instruction was legally appropriate because it accurately stated the law for overtaking a car on the right. CW Welding acknowledges that the instruction was legally appropriate.

For an instruction to be legally appropriate, it must fairly and accurately state the applicable law to the jury. *Castleberry v. DeBrot*, 308 Kan. 791, 802, 424 P.3d 495 (2018). In the district court, Robles requested the instruction found in PIK Civ. 4th 121.20 for overtaking a vehicle on the right. It reads:

> "The driver of a vehicle may overtake and pass upon the right of another vehicle only:
> "1. When the vehicle overtaken is making or about to make a left turn; or
> "2. Upon a roadway with unobstructed pavement of sufficient width for two or more lines of vehicles moving lawfully in the direction being traveled by the overtaking vehicle.
> "A driver may overtake and pass upon the right only under conditions permitting these movements in safety. These movements shall not be made by driving off the roadway."

The language of PIK Civ. 4th 121.20 is consonant with Kansas law as provided in K.S.A. 2020 Supp. 8-1517(a)-(b). We agree with the parties that PIK Civ. 4th 121.20 correctly stated Kansas law regarding passing a vehicle on the right.

Next, we analyze the critical question on appeal: Examining the record in the light most favorable to Robles, was there sufficient evidence to support the district court giving PIK Civ. 4th 121.20 to the jury? See *Foster*, 296 Kan. at 301-02.

In declining to give the requested instruction, the district court found that the evidence did not support Robles' claim that immediately prior to the collision Loewen was unlawfully attempting to pass Robles' semi-trailer on the right. The district court

8

noted that "no witness testified that they thought [Loewen] was passing, and . . . the brake marks testified to are consistent with him trying to avoid something in front of him . . . ."

On appeal, Robles contends that PIK Civ. 4th 121.20 was factually supported because the evidence showed Loewen intended to pass on the right and his pickup truck left the roadway before impact. Robles argues that in a light most favorable to him, the evidence supported the instruction.

On the other hand, CW Welding argues that the instruction was not factually appropriate because Myers' eyewitness testimony established that after Robles' tractor-trailer steered to the left and then began turning back to the right, Loewen's pickup truck continued straight ahead in its lane and only veered right off the roadway just before the collision. CW Welding highlights that the shadow marks shown in Trooper Hemel's photographs also contradict any inference that Loewen was attempting to pass Robles on the right.

A district court is required to provide an instruction supporting a party's theory of the case if there is sufficient evidence supporting that theory. *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 419, 228 P.3d 1048 (2010). Moreover, the district court has a duty to instruct the jury on applicable traffic statutes in a case involving motor vehicles. *Schallenberger v. Rudd*, 244 Kan. 230, 232, 767 P.2d 841 (1989). In reviewing the sufficiency of the factual basis for an instruction, both the district court and the appellate court must view the record in the best light for the party requesting the instruction. *Foster*, 296 Kan. at 301.

On appeal, Robles asserts the trial evidence favorable to his unlawful passing on the right theory "included at least conflicting evidence of what Mr. Loewen's intent was as to passing on the right." In this regard, Robles only references "[t]he Trooper's

9

testimony of shadow marks reflecting Loewen's vehicle leaving the [roadway] to the right 82 feet before the impact and US 56 being only one lane in each direction."

Robles' argument is that because Loewen's truck left the roadway about 82 feet before impact, the driver was necessarily attempting to unlawfully pass on the right-hand shoulder. But Trooper Hemer testified that the shadow marks were made when Loewen applied his anti-lock brakes. In other words, Trooper Hemer's testimony established that Loewen was not attempting to pass on the right because at the time his pickup truck left the roadway Loewen was applying his brakes. It is understatement to observe that a driver intending to pass or overtake another vehicle on the right does not apply his brakes to accomplish the maneuver.

On the contrary, the trial evidence contradicted Robles' theory that Loewen was attempting to unlawfully pass on the right when his pickup truck veered off the highway immediately before the collision. At the time, Myers was six to seven truck lengths behind, well-positioned to observe the movement of the vehicles. Myers confirmed that Robles' trailer remained in the westbound lane while his tractor steered into the eastbound lane before making the right turn. This testimony was corroborated by Robles who stated that his tractor steered left into the eastbound lane of U.S. 56 directly before he made the right turn onto 21 Road. During that turn the trailer remained in the westbound lane with Loewen's pickup truck directly behind it.

According to Myers, when the tractor-trailer made the right turn, Loewen's truck continued driving straight ahead on the highway and veered to the right just before hitting the tractor. Myers testified that Loewen's truck "didn't go off the road until after the impact." Based on this testimony, Loewen was close behind Robles' trailer prior to the right turn and his truck veered to the right as a reaction to the tractor-trailer turning right in front of him. That inference is consistent with the shadow marks left by Loewen's pickup truck. Moreover, Trooper Hemel testified that the pavement was not wide enough

10

for Loewen to pass the tractor-trailer on the right because U.S. 56 is a two-lane highway with a narrow shoulder consisting of pavement that is less than 4-feet wide.

In summary, upon our independent review of the trial record and in the light most favorable to Robles, we are convinced there was insufficient evidence to support the district court giving PIK Civ. 4th 121.20 for the jury's consideration. The district court did not err in declining to provide the instruction.

On a related matter, Robles contends the district court abused its discretion when it denied his posttrial motion to alter the judgment based on the legal error of failing to properly instruct the jury by giving PIK Civ. 4th 121.20. Robles seeks a reversal of the denial of the motion and a remand for a new trial. CW Welding did not brief this issue.

Appellate courts review a district court's denial of a motion to alter or amend a judgment for an abuse of discretion. *Wenrich v. Employers Mutual Ins. Co.*, 35 Kan. App. 2d 582, 585, 132 P.3d 970 (2006). A judicial action constitutes an abuse of discretion if it is unreasonable or based on an error of law or fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

The purpose of a motion to alter or amend is to provide an opportunity for the district court to correct a prior error. It is not an opportunity to present additional evidence that could have been previously submitted prior to entry of the final order. *Ross-Williams v. Bennett*, 55 Kan. App. 2d 524, 564, 419 P.3d 608 (2018). On appeal, Robles reprises his arguments regarding the district court's error in failing to give the instruction.

11

In denying Robles' motion to alter the judgment, the district judge ruled:

"I do believe the facts clearly supported that [Loewen] was following too close with that size of load, that . . . when the turn started to occur, he could not avoid it. And, he took evasive action, which was the only thing he could do, which was to the right.

". . . I still don't find that there was any evidence that he was—that he had a plan to—to overtake or pass to the right, that it was just simply a reaction to attempt to avoid a collision, which ultimately was not avoidable."

As discussed earlier in our analysis which concluded there was insufficient evidence to submit the PIK Civ. 4th 121.20 jury instruction, we agree with the district court. On appeal, Robles has not shown that the district court's posttrial decision was based on an error of law or fact, or that no reasonable person would agree with the ruling of the court.

Affirmed.